# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

STEVEN LEE,

     Plaintiff,

    v.

HENRY G. JARECKI, CHRISTOPHER HARRISON, THE FALCONWOOD CORPORATION, DOES 1 THROUGH 50, INCLUSIVE, ABC CORPORATIONS 1 THROUGH 50, INCLUSIVE

     Defendants.

Case No. 18-CV-09400-CM

ORAL ARGUMENT REQUESTED

## MEMORANDUM OF LAW IN SUPPORT OF MOTION BY DEFENDANTS HENRY G. JARECKI, CHRISTOPHER HARRISON, AND THE FALCONWOOD CORPORATION TO DISMISS PLAINTIFF'S COMPLAINT

Gary J. Mennitt
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10046
(212) 698-3831
(212) 314-0011 (facsimile)
gary.mennitt@dechert.com

Dated:  November 28, 2018

*Attorneys for Defendants*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

FACTS AND PROCEDURAL HISTORY ................................................................. 4

ARGUMENT ................................................................................................................ 10

I.    THE FIRST CLAIM FOR BREACH OF CONTRACT SHOULD BE
      DISMISSED AS IMPLAUSIBLE AND FOR FAILURE TO STATE A CLAIM ......... 11

II.   THE SECOND AND THIRD CLAIMS FOR UNJUST ENRICHMENT AND
      QUANTUM MERUIT SHOULD BE DISMISSED AS DUPLICATIVE AND
      FOR FAILURE TO STATE A CLAIM ............................................................ 12

III.  THE FOURTH CLAIM FOR FRAUD SHOULD BE DISMISSED AS VAGUE,
      DUPLICATIVE, AND FOR FAILURE TO STATE A CLAIM ................................... 14

IV.   THE FIFTH CLAIM FOR DEFAMATION SHOULD BE DISMISSED AS
      TIME BARRED AND FOR FAILURE TO STATE A CLAIM................................... 17

CONCLUSION ............................................................................................................ 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aronson v. Wiersma*,
   65 N.Y. 2d 592 (1985) ........................................................................................................21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..........................................................................................................10

*Attas v. Park East Animal Hosp., Inc.*,
   235 A.D. 2d 246 (1st Dep't 1997) ....................................................................................21

*Ava v. NYP Holdings, Inc.*,
   64 A.D. 3d 407 (1st Dep't 2009) ................................................................................20, 21

*Bazak Int'l. Corp. v. Tarrant Apparel Grp.*,
   347 F. Supp. 2d 1 (S.D.N.Y. 2004) ..................................................................................13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................................10, 11

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*,
   98 F.3d 13 (2d Cir. 1996) ..................................................................................................17

*Burke v. Bd. of Educ. of the Auburn Enlarged City Sch. Dist.*,
   No. 5:17-CV-157, 2018 WL 5831309 (N.D.N.Y. Nov. 7, 2018) .......................................19

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*,
   70 N.Y. 2d 382 (1987) ......................................................................................................13

*Chisholm v. Memorial Sloan-Kettering*,
   748 F. Supp. 2d 319, 322 (S.D.N.Y. 2010) .....................................................................18

*Dillon v. City of New York*,
   261 A.D. 2d 34 (1st Dep't 1999) ......................................................................................19

*Empire Merchants, LLC v. Reliable Churchill LLLP*,
   902 F.3d 132 (2d Cir. 2018) ..............................................................................................10

*Etheredge-Brown v. Am. Media, Inc.*,
   13 F. Supp. 3d 303, 305 (S.D.N.Y. 2014) .......................................................................17

*Fetter v. Schink*,
   902 F. Supp. 2d 399 (S.D.N.Y. 2012) ..............................................................................17

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013) ........................................................................................11, 12

*Frankfurt-Trust Inv. Luxemburg AG v. United Technologies Corp.*,
__F. Supp. 3d__, No. 17 Civ. 3570, 2018 WL 4682788 (S.D.N.Y. Sept. 28,
2018) ....................................................................................................................................14

*Georgia Malone & Co. v. Rieder*,
19 N.Y.3d 511 (2012) ...........................................................................................................13

*Kalnit v. Eichler*,
264 F.3d 131 (2d Cir. 2001)...................................................................................................16

*United States ex rel. Ladas v. Exelis, Inc.*,
824 F.3d 16 (2d Cir. 2016).....................................................................................................14

*Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*,
821 F. Supp. 2d 616 (S.D.N.Y. 2011).....................................................................................16

*Lee v. Jarecki*,
No. 1:14-cv-06986-KBF (S.D.N.Y. May 19, 2015) ....................................................... *passim*

*Lee v. Jarecki*,
No. 1:18-cv-09112-GHW (S.D.N.Y. Oct. 10, 2018)..........................................................1, 10

*Lerner v. Fleet Bank, N.A.*,
459 F.3d 273 (2d Cir. 2006)..............................................................................................15, 16

*Liberman v. Gelstein*,
605 N.E. 2d 344 (1992)...........................................................................................................20

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
797 F.3d 160 (2d Cir. 2015)....................................................................................................15

*MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*,
157 F.3d 956 (2d Cir. 1998)....................................................................................................13

*Martin v. Daily News L.P.*,
121 A.D. 3d 90 (1st Dep't 2014) ............................................................................................20

*Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*,
418 F.3d 168 (2d Cir. 2005)........................................................................................12, 13, 14

*Milan Music, Inc. v. Emmel Commc'ns Booking, Inc.*,
37 A.D. 3d 206 (1st Dep't 2007) ............................................................................................12

*Mills v. Everest Reinsurance Co.*,
410 F. Supp. 2d 243 (S.D.N.Y. 2006) (McMahon, J.)............................................................16

*In re Morgan Stanley Info. Fund Sec. Litig.*,
592 F.3d 347 (2d Cir. 2010)....................................................................................................14

*MT Prop., Inc. v. Ira Weinstein & Larry Weinstein, LLC*,
50 A.D. 3d 751 (2d Dep't 2008) ........................................................................................13, 14

*Okello v. Schwartzapfel, P.C.*,
No. 154971/2017, 2018 WL 1256999 (Sup. Ct., NY Cty. Mar. 12, 2018) ............................19

*Pantoja v. Banco Popular*,
545 F. App'x. 47 (2d Cir. 2013) ...................................................................................11, 12

*Rakylar v. Washington Mut. Bank*,
51 A.D. 3d 995 (2d Dep't 2008) ..............................................................................................12

*Rinaldi v. Holt, Rinehart & Winston, Inc.*,
366 N.E. 2d 1299 (1977).........................................................................................................20

*Rosenfeld v. Schlecker*,
5 A.D.3d 461 (2d Dep't 2004) ................................................................................................18

*Pension Benefit Guar. Corp. ex rel. Saint Vincent Catholic Med. Ctrs. Ret. Plan v.
Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013).......................................................................................4, 11, 12

*Town of Haverstraw v. Columbia Elec. Corp.*,
237 F. Supp. 2d 452 (S.D.N.Y. 2002) .....................................................................................17

*Trustees of Plumbers and Pipefitters Nat'l Pension Fund v. De-Con Mech.
Contractors, Inc.*,
896 F. Supp. 342 (S.D.N.Y. 1995) ..................................................................................15, 16

*Weaver v. Chrysler Corp.*,
172 F.R.D. 96 (S.D.N.Y. 1997) ..............................................................................................16

*Woori Bank v. RBS Sec., Inc.*,
910 F. Supp. 2d 697 (S.D.N.Y. 2012).....................................................................................15

*Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*,
286 F. Supp. 3d 634, 642 (S.D.N.Y. 2017).............................................................................10

**Other Authorities**

Fed. R. Civ. P. 9(b) ..................................................................................................3, 14, 15, 16

Fed. R. Civ. P. 12(b)(6)..............................................................................................................1

N.Y. C.P.L.R. § 208..................................................................................................................18

N.Y. C.P.L.R. § 215(3) .............................................................................................................17

## INTRODUCTION

This represents the third action brought by Plaintiff Steven Lee against Defendant Dr. Henry Jarecki ("Jarecki") and now also against his entity the Falconwood Corporation ("Falconwood") and corporate counsel Christopher Harrison ("Harrison"). All three actions represent futile attempts to recover on an alleged oral promise to share imaginary profits from an unsuccessful trading strategy briefly implemented in 2013, and then rapidly discontinued. Notwithstanding substantial discovery in the first action, plaintiff is still unable to plead a claim.

Plaintiff's previous two actions concerning these claims were dismissed in this Court without prejudice. First the case was dismissed by Judge Forrest in 2015, near the close of discovery, after Plaintiff's counsel informed the Court that he had become convinced "that Plaintiff is not *compos mentis*." Memorandum of Law in Support of Motion to Appoint Guardian Ad Litem at 4, *Lee v. Jarecki*, No. 1:14-cv-06986-KBF (S.D.N.Y. May 19, 2015), Dkt. No. 28. Second the case was dismissed by Judge Woods on October 10, 2018 because Plaintiff had included non-diverse Defendants that have been dropped in this third iteration. Order, *Lee v. Jarecki*, No. 1:18-cv-09112-GHW (S.D.N.Y. Oct. 10, 2015), Dkt. No. 5.

This third action should be dismissed as well. The Complaint is completely implausible and built upon sand. Plaintiff alleges that after he imparted his first trade idea, from August through November 2013, he "disclosed other Trade Ideas" (although he does not say to whom he communicated these ideas) and sets forth a list of 38 supposed ideas. Compl. ¶ 31. A similar paragraph was included in Plaintiff's 2014 Complaint, but that paragraph only included the first 8 ideas. Complaint, *Lee*, No. 1:14-cv-06986-KBF (S.D.N.Y. Aug. 27, 2014), Dkt. No. 1. Plaintiff makes no effort to explain why he omitted 32 of his ideas when he commenced the prior action over four years ago. Nor does he attempt to explain how he came to discover related

claims against Falconwood and Harrison, neither of whom was named as a defendant in 2014 or 2015.

Plaintiff claims that he "is a brilliant investor with a decorated career," Compl. ¶ 1, who consistently invented highly successful trading strategies based on arbitrage techniques, including "[i]nstant lottery scratch off ticket arbitrage" and the potential to profit from the observation that "Berkshire Hathaway stock may fall after Warren Buffett dies." Compl. ¶ 31(p). He alleges that in 2013 Jarecki "agreed to implement many" of these strategies and that he "was promised adequate compensation," Compl. ¶ 1, including a percentage of any profits from his strategies above a threshold amount. Compl. ¶ 29. Allegedly, Jarecki wanted even more "close-to-zero-risk" trade ideas. Compl. ¶ 28. Jarecki allegedly implemented the "Original Trade Idea," more appropriately called the "Sprott Trade",[1] involving metals arbitrage, which Plaintiff had pitched to others as well, including Warren Buffet. Compl. ¶¶ 16-17, 29, 42. Plaintiff was never employed by any of the Defendants but he received a payment of $10,000 on October 3, 2013; "Plaintiff believed he was owed significantly more;" and Jarecki offered Plaintiff an additional $20,000 separation payment in exchange for a Non-Competition Agreement and a Confidentiality Agreement including a waiver of claims. Compl. ¶ 52.

The details of this implausible claim are notably absent, significantly including any allegation that the Defendants profited from the Sprott Trade in any amount more than the $45,000 disclosed to Plaintiff on January 24, 2014. Compl. ¶¶ 50-55. Plaintiff states his unfounded belief that someone implemented the strategy in quantities far beyond what Jarecki had disclosed. Compl. ¶ 56 (referencing "about $400,000,000 of [gold transactions]"). But no

---

[1] The term "Original Trade Idea" is used throughout the Plaintiff's Complaint. But there was nothing "original" about the Plaintiff's trading idea. What Plaintiff defines as the "Original Trade Idea" is more appropriately called the "Sprott Trade," and a sworn accounting of those trades was provided in Defendants' Interrogatory responses in the 2014 version of this lawsuit. Plaintiff makes no factual allegations concerning any other trading done by Jarecki or any entity or person affiliated with him.

facts are alleged from which any plausible inference can be drawn to indicate that those transactions had anything to do with Plaintiff's trade idea, or that any of the Defendants did any such trading.  Plaintiff alleges no facts which, even if proven, would indicate that he is entitled to share in any phantom "profits."  This is particularly inexcusable because he has already litigated these claims for nearly a year in the first of his three actions.

In addition to his contract and quasi-contract claims seeking to share in imaginary and unspecified profits, Plaintiff alleges a fraud claim that Defendants never intended to perform and that they "grossly misrepresented the volume and profit of relevant trades" to "induce him to accept lower compensation."  Compl. ¶¶ 94-96.  But again, completely lacking is any factual basis to conclude that what Plaintiff was told was inaccurate—it was true and Plaintiff knows that from the discovery he received in the 2014 action.  The claim does not remotely "state with particularity the circumstances constituting fraud," as required by Fed. R. Civ. P. 9(b).

Plaintiff also asserts a plainly time-barred and otherwise meritless defamation claim, alleging that, days after he filed his first delusional lawsuit in 2014, Reuters published an article quoting Plaintiff's own complaint and Jarecki's response that "Lee's arbitrage strategy yielded a small profit."  Compl. ¶ 102.  There was nothing defamatory in the Reuters article but Plaintiff alleges that it caused him to go "from having lunch with Warren Buffet to purchasing lunch with food-stamps."  Attempting to explain his tardiness, Plaintiff then suggests a different cause of his problems, that he "suffered serious health issues and was unable to fully participate, recollect facts, and speedily litigate the matter in the Previously Filed Complaint."  Compl. ¶¶ 64-68.

Plaintiff's pleading defects are further aggravated by the fact that extensive party and non-party discovery was exchanged in 2014 and 2015 in the action then-pending before Judge Forrest, and that discovery was contemporaneously outlined in some detail in a joint letter filed by the lawyer who represented Plaintiff.  The discovery exchanged included Jarecki's sworn

3

interrogatory responses, with an accounting of the relevant transactions and the modest profits. Plaintiff also received confirmatory documents from FINRA and from the registrar and transfer agent for the relevant Sprott share certificates used in the Sprott Trade. Plaintiff's prior counsel, having received that discovery, never amended the complaint or otherwise took the position that there was any discrepancy between the transactions disclosed by the Defendants and the transactions disclosed by the share registrar.

This action should now be dismissed with prejudice.

## FACTS AND PROCEDURAL HISTORY

### Lee Cold-Calls Jarecki and They Meet in August 2013

Plaintiff Steven Lee cold-called Jarecki in 2013 to introduce himself and present an idea he had for arbitrage trading.[2] Compl. ¶¶ 16, 18. Jarecki agreed to meet with him, and the two held a series of meetings in August 2013. Compl. ¶¶ 22-28. Defendant Christopher Harrison was present at some of these meetings. *Id.* ¶25. During these meetings, Plaintiff presented an idea for arbitrage trading based on shares of commodities and made it clear he needed a source of capital and other resources to implement it.

By the end of August, 2013, the parties were in agreement as to the basic outlines of a business arrangement whereby Jarecki would supply unspecified amounts of capital to allow Lee to implement his trading idea. *Id.* ¶ 29. Jarecki also agreed to provide some compensation to Lee. According to the Complaint, Jarecki agreed to pay Plaintiff the greater of $12,500 per month, or 12% of any gross profits resulting from the implementation of Plaintiff's trading idea. *Id.* Jarecki would also pay for Plaintiff's Bloomberg subscription in order to facilitate his access to trading data. *Id.* Additionally, Jarecki agreed to attempt to provide health insurance for

---

[2] Solely for the purposes of this motion directed to the pleading, the well-pleaded allegations of the Complaint are treated as if they were true. *Pension Benefit Guar. Corp. ex rel. Saint Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013).

Plaintiff, but only if he was added to a payroll and with no guaranty that he would be able to do so.  *Id.*

**Lee Works to Implement the Trade Idea**

The Complaint alleges that Plaintiff worked on implementing his referenced trading idea, as well as other trading ideas, for approximately two or three months, through November 2013. Compl. ¶ 32.  During that time, he exchanged information about the financial markets and trading dynamics with Harrison and others working with Jarecki.  *Id.* ¶ 35.

**Early Problems in the Relationship**

After only about a month on the job, by early October 2013 there were signs the relationship was not working out.  *See* Compl. ¶¶ 37-43.  Plaintiff complains that he was being kept in the dark about trading activity and volumes, *see id.* ¶¶42-43, and Jarecki became increasingly concerned about Plaintiff's trading strategy.  Compl. ¶ 45.  The Plaintiff was paid $10,000 on October 3, 2018, *id.* ¶ 40, as part of his compensation, and Jarecki and Plaintiff agreed to modify their arrangement to change the periodic compensation level and to reduce the potential incentive fee from 12.5% down to 10% of any gross profits resulting from Plaintiff's trading ideas.  *Id.* ¶ 41.  Plaintiff notes that he never became a payroll employee and thus did not receive health insurance, but concedes he knew this was not guaranteed.  *Compare* Compl. ¶ 39, *with* Compl. ¶ 29h.

**Plaintiff Suspicious About the Trading Volume**

Plaintiff says he suspected that the Defendants might be causing undisclosed trading based on his trading ideas.  *See* Compl. ¶¶ 42, 44, 45, 51, 56.  For example, Plaintiff claims he "learned that Jarecki had redeemed over $1,000,000 worth of trust shares for physical gold as called for by the Original Trade Idea." *Id.* ¶ 42. Plaintiff does not specify how he learned this, whether it was based on his trading idea, or whether this was covered and included by the

documented accounting he obtained in discovery in his 2014 action. Similarly, paragraph 44 states that Plaintiff "noticed" that redemption of trust units of commodities "skyrocketed." In paragraph 56 the Plaintiff claims the trading amounts were worth "about $400,000,000." Again he does not explain how he learned this information or why he thinks the Defendants might be connected to these trades. Further, these allegations do nothing to link the alleged trades to any ideas or contributions of Plaintiff.

**Plaintiff Unable to Allege Any Undisclosed Profits**

Even if these larger trades occurred and were based on Plaintiff's trading idea, he does not allege that they resulted in any profits for the Defendants, which would be necessary to trigger his percentage-based incentive compensation. For example, while Plaintiff does allege in paragraph 45 that Jarecki told him he had invested $5 million in a transaction based on the Plaintiff's trading idea, he does not allege that any profits flowed from those trades, nor does he deny that this investment was covered in the disclosures he has already received.

The lack of profit allegations is a consistent pattern throughout the Complaint. *See, e.g.*, Compl. ¶ 48 (stating Plaintiff "noticed substantial increased trading" but no allegation regarding profitability); ¶ 51 (Plaintiff noticed "unusually high trading and redemption activity" but no allegation regarding profitability).

**The Trading Was Not Materially Profitable and the Relationship Ends in November 2014**

In fact, the Plaintiff's trading ideas were not materially profitable, and the business relationship between Plaintiff and Jarecki was not working out. *See* Compl. ¶ 52 (Jarecki informed Plaintiff that the profits from his trading idea were only $25,185 by the end of January, 2014). By the end of November 2013, Jarecki informed Plaintiff that the business relationship was ending as of that time. Jarecki "stopped paying for Plaintiff's Bloomberg subscription" and ceased communicating with Plaintiff about Jarecki's business matters and ongoing investments.

6

Compl. ¶¶ 46, 47.  Although Plaintiff alleges he worked through December 2013 to implement

his trading idea with Jarecki's investment money, *see* Compl. ¶ 36, the business relationship was

over.

Jarecki tried to pay Plaintiff additional and final compensation for time spent.  *See*

Compl. ¶¶ 52-55.  The specific amount Plaintiff claims he was owed (putting aside the phantom

"profits") is not entirely clear from the Complaint, but in any event was less than $30,000.  *See*

Compl. ¶ 52 (indicating $20,000); ¶ 54 (indicating $27,500).  Jarecki allegedly requested

Plaintiff sign a confidentiality and non-competition agreement in connection with his final

payment and termination, including a waiver of claims, but the Plaintiff refused to do so.  *Id.* ¶

55.  The Plaintiff refused to accept the proffered final payment because he "[b]eliev[ed] he was

owed substantially more money."  *Id.*

**First Lawsuit Filed on August 27, 2014 and Reuters Then Publishes an Article**

Instead, on August 27, 2014, Plaintiff filed a lawsuit against Jarecki in the Southern

District of New York alleging, among other things, breach of contract.  *See* Complaint, *Lee v.*

*Jarecki*, No. 1:14-cv-06986-KBF (S.D.N.Y. Aug. 27, 2014), Dkt. No. 1.  A few days later,

according to the Complaint, Jarecki was interviewed by Reuters, which published a story about

the Plaintiff's then-pending lawsuit.[3]  Compl. ¶ 60.  Jarecki allegedly told Reuters that the

profits from the trading strategy were small, and that he tried to pay Plaintiff between $20,000

and $30,000 in final compensation.  *Id.*

Although the Reuters interview occurred just days after Plaintiff filed his complaint in the

2014 lawsuit, Plaintiff did not sue for defamation or seek to amend the complaint to add an

additional claim for defamation at any time before that action was dismissed in 2015.

---

[3] The Plaintiff does not provide the Reuters article with his Complaint.  The article is attached to the Mennitt
Declaration as Exhibit F and is available here:  https://www.reuters.com/article/us-gold-trader-lawsuit/exclusive-
famed-gold-bug-sued-for-not-paying-trader-idUSKBN0GT0BD20140829.

**Extensive Party and Non-Party Discovery Exchanged**

The 2014 lawsuit was pending before Judge Forrest for over ten months and extensive paper discovery was exchanged.  *See* Joint Discovery Chronology, *Lee*, No. 1:14-cv-06986-KBF (S.D.N.Y. Jan. 9, 2015), Dkt. No. 19.

In 2014 and 2015, the parties conducted extensive document discovery into the same issues raised by the instant Complaint—specifically, Jarecki's trading in the arbitrage strategy Lee proposed, and the extent to which those trades were profitable.  The parties submitted to the Court a joint chronology of that discovery by letter dated January 9, 2015.  A copy of that letter is submitted herewith as Exhibit A to the Declaration for Gary J. Mennitt ("Mennitt Decl.").

As part of the disclosures, Jarecki produced a sworn accounting of all trading activity regarding the relevant trades in his response to Plaintiff's interrogatories on January 9, 2015.  Mennitt Decl., Ex. B.  This accounting showed the amount invested and redeemed, and the net and gross profits.  *Id.*  In addition to Defendant's interrogatory responses that controvert Plaintiff's theories, Plaintiff received confirmatory document discovery from Jarecki and third-party discovery as well.   Mennitt Decl. Ex. A, at 3, 5.  Plaintiff produced documents on December 19, 2014 and Defendants produced documents on January 9 and 12, 2015, including voluminous documents evidencing the trading at issue.

Plaintiff also obtained third-party discovery from FINRA and from the Registrar and Trust Company to confirm the Sprott Trade activity and also trading by third-parties placed at issue by Plaintiff.  Plaintiff conceded in the January 9, 2015 joint letter to Judge Forrest that on December 12, 2014 Registrar and Trust Company had produced, in response to Plaintiff's subpoena, "documents showing share certificates issued by the Sprott trusts [that are the subject of Plaintiff's profit claim]."  Mennitt Decl. Ex. A, at 3.  Indeed, the documents showed that a significant number of the trust units used in the Sprott Trade were held by a third party bank and

Plaintiff conceded this point.  Mennitt Decl. Ex. A, at 3 ("[t]he documents also show a large

volume of certificates issued to Credit Suisse….").  Similarly, Plaintiff told the court he was able

to "confirm[] that FINRA is the entity that possesses the trade information regarding the Sprott

trusts," and that he had received their documents.  *Id.* at 2.  Plaintiff cannot and has not ever

alleged that any additional trading disclosed through third party discovery was done on behalf of

the Defendants—it was not.  Nor has Plaintiff ever alleged that the confirmatory FINRA and

registrar documents contradicted Jarecki's sworn interrogatory responses in any way—to the

contrary, they were completely consistent.

**Plaintiff's *Pro Se* Filings and Dismissal of the First Lawsuit**

Subsequently, Plaintiff made several *pro se* filings in March 2015 (while represented by

predecessor counsel) alleging numerous conspiracy theories and other matters wholly unrelated

to his lawsuit.  *Lee*, No. 1:14-cv-06986-KBF, Dkt. Nos. 22-24.  Judge Forrest struck those filings

from the docket.  Order, *Lee*, No. 1:14-cv-06986-KBF (S.D.N.Y. Mar. 31, 2015), Dkt. No. 24.

Two days after Plaintiff's motion for a guardian *ad litem*, Judge Forrest issued an order staying

the 2014 action generally and specifically any further third party discovery.  *See* Mennitt Decl.

Ex. D.  Plaintiff's counsel then sought a hearing to determine whether a guardian *ad litem* should

be appointed for Plaintiff and said that he was convinced that "Plaintiff is not *compos mentis.*"

Mennitt Decl. Ex. C, at 4.  Judge Forrest declined to hold a hearing on the Plaintiff's mental

competency or to appoint a guardian *ad litem* to proceed with the suit.  Instead, she dismissed the

matter without prejudice.  Significantly, Judge Forrest, in her dismissal order stated "[t]his order

does not alter or enlarge any statute of limitations."  Mennitt Decl. Ex. E.

**Three Years Later, the Second Lawsuit was Dismissed By Judge Woods**

The Plaintiff filed a second closely related lawsuit based on trading profit allegations on

October 4, 2018.  Complaint, *Lee v. Jarecki et. al.*, No. 1:18-cv-09112-GHW (S.D.N.Y. Oct. 4,

2018), Dkt. No. 1. This complaint was substantively similar to the one filed in 2014, but it added

additional defendants and a claim for defamation based on the Reuters article. *Id.* ¶¶ 99-107.

Judge Woods dismissed that case without prejudice on October 10, 2018, because the Plaintiff

failed to show facts establishing diversity jurisdiction with respect to certain of the newly-added

defendants. *See* Order, *Lee v. Jarecki et. al.*, No. 1:18-cv-09112-GHW (S.D.N.Y. Oct. 10,

2018), Dkt. No. 5.

**This Third Lawsuit Was Then Filed**

Finally, the Plaintiff filed the instant lawsuit on October 16, 2018, after dropping the non-

diverse defendants. *See* Complaint, Dkt. No. 3.

## ARGUMENT

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to

relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007);

*Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009). This requires a significant showing, and mere

"labels and conclusions" or a "formulaic recitation of the elements of a cause of action" are

insufficient. *Twombly*, 550 U.S. at 555; *see Empire Merchants, LLC v. Reliable Churchill LLLP*,

902 F.3d 132, 139 (2d Cir. 2018). Facts that "merely create[] a suspicion [of] a legally

cognizable right of action" fall short of the plausibility standard and cannot survive a motion to

dismiss. *Twombly*, 550 U.S. at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and

Procedures § 1216, at 235-36 (3d ed. 2004)); *see Zohar CDO 2003-1, Ltd. v. Patriarch Partners,

LLC*, 286 F. Supp. 3d 634, 642 (S.D.N.Y. 2017) ("If the plaintiff 'has not nudged [his] claims

across the line from conceivable to plausible, [the] complaint must be dismissed.'") (quoting

*Twombly*, 550 U.S. at 570)).

Instead, a complaint must allege "enough factual matter (taken as true) to suggest that"

actionable conduct occurred. *Twombly*, 550 U.S. at 556. "Where the well-pleaded facts do not

permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d at 718 (quoting *Iqbal*, 556 U.S. at 679)).  "Although for the purposes of a motion to dismiss [courts] must take all of the factual allegations in the complaint as true, [they] are not bound to accept as true a legal conclusion couched as a factual allegation."  *Id.* at 717 (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted)).

**I.**     **The First Claim for Breach of Contract Should Be Dismissed as Implausible and for Failure to State a Claim**

The Plaintiff's breach of contract claim against Jarecki boils down to an effort to recover a percentage of "profits" he suspects may have been generated from his trading idea and then hidden from him.  The simple truth is there were only modest profits, inadequate to support a claim even under the terms of the agreement he alleges with Jarecki.  *See Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) (affirming dismissal of consumer protection claims on plausibility grounds alone); *Pantoja v. Banco Popular*, 545 F. App'x. 47, 49 (2d Cir. 2013) (dismissing claims on plausibility grounds alone).

Plaintiff's conclusory assertions that Jarecki was trading in "large sums of money" based on trading ideas Plaintiff supplied is not grounded in any factual pleading.  Plaintiff cites figures in the millions of dollars, *see* Compl. ¶¶ 42, 45, 56, but does not identify the source of that information or why he thinks it might be connected to Jarecki or even to Plaintiff's trading ideas. Indeed, he admits that he "shopped around his Original Trade Idea to advanced investors, including Warren Buffet."  Compl. ¶ 17.  No inference can be drawn that the Defendants hid any trading or that there were undisclosed trades or profits.  Having litigated this case for over ten months and having taken extensive party and non-party discovery, Plaintiff is still unable to plead facts sufficient to support a claim and this action should be dismissed as implausible.  *See Fink*, 714 F.3d at 742; *Pantoja,* 545 F. App'x. at 49.

Further, Plaintiff does not allege anywhere in the Complaint that such trades generated profits.  Under the agreement as alleged, Plaintiff's entitlement was at most to share in profits from the only trading idea he alleges was implemented, the "Original Trade Idea."  *See* Compl. ¶ 29.  No plausible inference can be drawn from the Complaint that Defendants profited from Plaintiff's trading ideas and deprived him of his claimed percentage of any gross profits.  *See Fink*, 714 F.3d at 742; *Pantoja*, 545 F. App'x. at 49.  Plaintiff's bald allegations are not enough to state a claim. *See Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d at 718.

Plaintiff's failure to allege profits to share is independently fatal to his contract claim. *See Rakylar v. Washington Mut. Bank*, 51 A.D. 3d 995, 995-96 (2d Dep't 2008) (plaintiff could not establish breach of contract because although "it is undisputed that the defendant [bank] made several errors in regard to the plaintiff's refinancing transaction. . . . the damages alleged by the plaintiff are too speculative to sustain the cause of action").  Plaintiff's claim is nothing but inferences, conjecture, and wishful thinking, and should be dismissed.  *See Milan Music, Inc. v. Emmel Commc'ns Booking, Inc.*, 37 A.D. 3d 206, 206 (1st Dep't 2007) ("[P]laintiffs' alleged damages amount to nothing more than conjecture as to what could have been earned had the concert been held.  Without a clear demonstration of damages, there can be no claim for breach of contract.").

## II.     The Second and Third Claims for Unjust Enrichment and Quantum Meruit Should Be Dismissed as Duplicative and for Failure to State a Claim

Under New York law, "quantum meruit and unjust enrichment [claims are analyzed] together as a single quasi contract claim."  *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) (applying New York law).  They are not separate causes of action.  Instead, quantum meruit is a "measure of liability" for unjust enrichment.  *See id.* (quoting *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 768 F. Supp. 89, 96 (S.D.N.Y. 1991)).

"[W]ell-settled principles of New York law . . . preclude" a plaintiff from pursuing an unjust enrichment claim where the parties have an agreement governing the same subject matter. *MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 157 F.3d 956, 964 (2d Cir. 1998); *see Mid-Hudson Catskill Rural Migrant Ministry, Inc*, 418 F.3d at 175; *Bazak Int'l. Corp. v. Tarrant Apparel Grp.*, 347 F. Supp. 2d 1, 4 (S.D.N.Y. 2004); *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y. 2d 382, 388 (1987). Where the underlying contract claim covers the same subject matter, related quasi-contract claims must be dismissed "as a matter of law." *MT Prop., Inc. v. Ira Weinstein & Larry Weinstein, LLC*, 50 A.D. 3d 751, 752 (2d Dep't 2008).

Here, Plaintiff's claims of unjust enrichment and quantum meruit impermissibly restate his breach of contract claim against Jarecki. That agreement covers the same subject matter— the trading at issue—raised in the quantum meruit and unjust enrichment claims. Plaintiff is not entitled to anything in quasi contract for the same reason he is not entitled to anything on his contract claim—he cannot identify and allege any undisclosed profits to share in because there were none. *See Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516 (2012) (discussing elements of unjust enrichment); *Mid-Hudson Catskill Rural Migrant Ministry, Inc.*, 418 F.3d at 175 (quantum meruit claims require showing that Plaintiff performed services for which he is entitled to compensation).

While the Plaintiff's breach of contract claim is only asserted against Jarecki individually, the quasi contract claims are purportedly against all Defendants. Yet the Plaintiff does not allege anything that the other Defendants (Harrison and Falconwood) did that could sustain these claims. The Complaint is devoid of any substantive reference to Falconwood, beyond explaining its corporate status, organization and location.[4] Compl. ¶ 11. And the few

---

[4] The Plaintiff also alleges some of his meetings with Jarecki took place at Falconwood's offices. *See* Compl. ¶¶ 20, 50.

references to Harrison make clear his role was as an agent of Jarecki or one or more of the entities with whom Plaintiff worked to implement the trades.  *See, e.g.*, Compl. ¶ 33 ("Plaintiff worked closely with Jarecki's subordinates, including Defendant Harrison.").

Plaintiff does not allege that he provided uncompensated services to Harrison or Falconwood.  Nor does he allege that those Defendants were enriched in any way.  Plaintiff's quasi-contract claims against Defendants Harrison and Falconwood are thus fundamentally defective for failure to allege any supporting allegation against them, let alone allegations pleading a basis for unjust enrichment or quantum meruit.  *See MT Prop., Inc.*, 50 A.D. 3d at 752; *Mid-Hudson Catskill Rural Migrant Ministry, Inc.*, 418 F.3d at 175.  These claims should be dismissed in their entirety.

**III.  The Fourth Claim for Fraud Should Be Dismissed as Vague, Duplicative, and for Failure to State a Claim**

Plaintiff's conclusory allegations of fraud fall well below the heightened pleading standard for such claims.  *See* Fed. R. Civ. P. 9(b); *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358 (2d Cir. 2010); *Frankfurt-Trust Inv. Luxemburg AG v. United Technologies Corp.*, __F. Supp.3d__, No. 17 Civ. 3570, 2018 WL 4682788, at *10 (S.D.N.Y. Sept. 28, 2018) (fraud claims "must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) by 'stating with particularity the circumstances constituting fraud.'") (quoting Fed. R. Civ. P. 9(b)).  "To satisfy this Rule, a complaint alleging fraud must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016) (internal quotation marks omitted).  Additionally, "[p]laintiffs are also required under Rule 9(b) to connect the allegations of fraud to each individual defendant" and "[a] complaint sounding in fraud may not rely on sweeping references to acts by all or some of the defendants because each named

14

defendant is entitled to be apprised of the facts surrounding the alleged fraud." *Trustees of Plumbers and Pipefitters Nat'l Pension Fund v. De-Con Mech. Contractors, Inc.*, 896 F. Supp. 342, 347 (S.D.N.Y. 1995).

"Under New York law, fraud requires proof of (1) a material misrepresentation or omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 170 (2d Cir. 2015) (citing cases). The heightened pleading standard of Rule 9(b) also applies to the scienter prong: "plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006).

Plaintiff's barebones and conclusory allegations fail to describe the allegedly fraudulent acts with any detail, let alone the detail required by Rule 9(b). *De-Con Mech. Contractors, Inc.*, 896 F. Supp. at 347. As with the quasi-contract claims discussed in Part II *supra*, the Complaint lacks any factual allegations of fraud against Defendants Harrison and Falconwood. The fraud claim should be dismissed on that basis alone as against these Defendants. *See id.* (requiring fraud claims be pled with particularity with respect to all defendants).

With respect to Jarecki, the fraud claim is just a restatement of the defective breach of contract claim that Plaintiff was undercompensated and that Defendants did not fully disclose their trading activity to him. But this theory is not supported by plausible allegations or sufficient detail. Like the claims in *De-Con Mech. Contractors, Inc.*, Plaintiff's claims are "conspicuously lacking in stating any particulars as to a specific instance of fraud," or "facts which give rise to a strong inference of fraudulent intent." *See* 896 F. Supp. at 347; *see also Lerner*, 459 F.3d at 290. Instead it is mere speculation, which cannot support a fraud claim. *See Woori Bank v. RBS Sec., Inc.*, 910 F. Supp. 2d 697, 703-04 (S.D.N.Y. 2012) (requiring the "who,

15

what, where, when, and how" details, and dismissing fraud claim for failure to allege such specifics); *De-Con Mech. Contractors, Inc.*, 896 F. Supp. at 347.

Plaintiff's contention that he was entitled to more money under his agreement with Jarecki depends on his unsupported assertion that "Defendants made and continue to make such trades [in high volumes] without telling Plaintiff or allowing Plaintiff to access information on said trades." Compl. ¶ 91; *see also* Compl. ¶ 94 ("Defendants grossly misrepresented the volume and profit of relevant trades."). These conclusory assertions are inadequate, particularly because Plaintiff concedes that he had "shopped around" the trading idea to others. Compl. ¶ 17. *See Mills v. Everest Reinsurance Co.*, 410 F. Supp. 2d 243, 248-49 (S.D.N.Y. 2006) (McMahon, J.) (dismissing fraud claim under Rule 9(b)); *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 101 (S.D.N.Y. 1997) (dismissing fraud claim for failure to plead in accordance with Rule 9(b)). The inadequacy of this pleading is further aggravated by the procedural history here – Plaintiff obtained extensive discovery in his 2014 action on the same "hidden profits" fraud claim.

To sustain the Plaintiff's fraud claims, the Court would need to infer that Jarecki (rather than the other "advanced investors" to whom Lee had pitched the idea (Compl. ¶ 17)) was trading in high and undisclosed volumes on the Sprott Trade and generating undisclosed profits. As discussed *supra*, the Plaintiff does not even allege that the purported trades were profitable. Plaintiff's innuendo is nothing more than "speculation and conclusory allegations" that cannot sustain a fraud claim. *See Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001); *Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*, 821 F. Supp. 2d 616, 623 (S.D.N.Y. 2011) (dismissing fraud claims borne on "sparse" allegations that "lack particulars.").

The Plaintiff's fraud claim should also be dismissed because it duplicates the breach of contract claim. "It is well settled under New York law that a claim for fraud predicated on a breach of contract cannot be asserted simply because a party did not intend to honor its express

16

contractual agreement." *Town of Haverstraw v. Columbia Elec. Corp.*, 237 F. Supp. 2d 452, 455 (S.D.N.Y. 2002) (citing cases). Plaintiff has not "demonstrate[d] a legal duty separate from the duty to perform under the contract," nor has he "demonstrate[d] a fraudulent misrepresentation collateral or extraneous to the contract." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996).

Here, the Plaintiff's fraud allegations involve statements or actions allegedly taken by the Defendants that are covered in the oral agreement the Plaintiff had with Jarecki. Compl. ¶¶ 91-93 (allegedly fraudulent acts involved concealing trades based on Plaintiff's ideas), *with* Compl. ¶ 29 (describing the terms of the oral agreement). Plaintiff alleges that Jarecki entered into the oral agreement without ever intending to perform it. Compl. ¶¶ 95, 96. But a fraud claim cannot be predicated on an allegedly insincere promise to perform under a contract. *Bridgestone/Firestone, Inc.*, 98 F.3d at 20; *Fetter v. Schink*, 902 F. Supp. 2d 399, 404-05 (S.D.N.Y. 2012).

Plaintiff also alleges that "Defendants grossly misrepresented the volume and profit of relevant trades" to "induce him to accept lower compensation." Compl. ¶¶ 94-96. However, since he did not accept what was offered in exchange for a release, his damages, even if hidden profits were not impossible to allege, would be for breach of the agreement to share profits.

The Plaintiff's fraud claim should be dismissed.

## IV.    The Fifth Claim for Defamation Should Be Dismissed as Time Barred and for Failure to State a Claim

Plaintiff claims that Jarecki defamed him in an interview with Reuters that was published in August 2014—over four years ago. *See* Compl. ¶¶ 60, 102. New York's statute of limitations for defamation claims is *one year*. N.Y. C.P.L.R. § 215(3). A cause of action for defamation accrues at the time the alleged statements are first published. *Etheredge-Brown v. Am. Media, Inc.*, 13 F. Supp. 3d 303, 305 (S.D.N.Y. 2014). Thus, the claim is time-barred and should be

dismissed. *See Chisholm v. Memorial Sloan-Kettering*, 748 F. Supp. 2d 319, 322 (S.D.N.Y. 2010).

Plaintiff makes a half-hearted effort to lay a foundation to toll the limitation period by alleging that "[a]s a result of serious health issues, Plaintiff was unable to bring the defamation claim in a timely manner." Compl. ¶ 68. He further states that "[d]ue to Plaintiff's mental incapacity, the statute of limitations on the above mentioned claimed [*sic*] is equitably tolled." Compl. ¶ 107. To the contrary, equitable tolling of the statute of limitations is permitted only where the plaintiff experiences "disability because of infancy or insanity at the time the cause of action accrues," N.Y. C.P.L.R. § 208, and the burden is on the plaintiff to show his disability. *Rosenfeld v. Schlecker*, 5 A.D.3d 461, 461 (2d Dep't 2004). Plaintiff does not even attempt to carry that burden and does not allege anything about his mental state when the cause of action accrued. He provides no details or context to allow the Court to evaluate whether he is entitled to tolling. He does not allege when the disability arose or when he regained competency to prosecute his claims.

First, the alleged defamatory statements in 2014 occurred just two days after the Plaintiff filed his first lawsuit. *See* Complaint, *Lee v. Jarecki*, No. 1:14-cv-06986-KBF (S.D.N.Y. Aug. 27, 2014), Dkt. No. 1. He could have amended his Complaint to include a defamation claim at that time, and he makes no effort to allege why he failed to do so. Second, the Plaintiff prosecuted his case until July 7, 2015, when it was dismissed without prejudice following his *pro se* filings, in disregard of his counsel, alleging conspiracy theories and other matters unrelated to his lawsuit. *See* Order, *Lee*, No. 1:14-cv-06986-KBF (S.D.N.Y. Mar. 31, 2015), Dkt. No. 24; Mennitt Decl. Ex. E. Even assuming the Plaintiff's alleged "serious health issues" took effect in March 2015, when he made those filings, over six months had passed from the publication of the Reuters article. And by the time the case was dismissed in July 2015, over ten months—nearly

18

the one year limitations period—had passed since the publication of the article with no effort to
amend the complaint.  "New York construes 'insanity' narrowly, extending the toll 'to only those
individuals who are unable to protect their legal rights because of an over-all inability to function
in society.'"  *Burke v. Bd. of Educ. of the Auburn Enlarged City Sch. Dist.*, No. 5:17-CV-157,
2018 WL 5831309, at *3 (N.D.N.Y. Nov. 7, 2018) (quoting *McCarthy v. Volkswagen of Am.,
Inc.*, 55 N.Y.2d 543, 548 (1982)).  Plaintiff does not even claim to have met this standard during
the 2014-2015 period when he was directing counsel and prosecuting his case against Jarecki.
Third, Judge Forrest's order dismissing the Plaintiff's earlier case stated "[t]his order does not
alter or enlarge any statute of limitations."  Mennitt Decl. Ex. E.

        Plaintiff has offered nothing other than conclusory statements in the Complaint as to his
alleged disability and the defamation claim should thus be dismissed as time barred.  *See Okello
v. Schwartzapfel, P.C.*, No. 154971/2017, 2018 WL 1256999, at *4 (Sup. Ct., N.Y. Cty. Mar. 12,
2018) (Finding that "[p]laintiff's allegations are simply too vague and not at all specific [enough
to warrant a hearing]; there are no issues of fact to be resolved because, as alleged, plaintiff has
not claimed that she was unable to function in society for enough time to make her causes of
action timely.").

        The Plaintiff's defamation claim also fails on the merits because the statements allegedly
attributed to Jarecki in the 2014 Reuters article fall well below the level that would be actionable.
"Making a false statement that tends to expose a person to public contempt, hatred, ridicule,
aversion or disgrace constitutes defamation."  *Martin v. Daily News L.P.*, 121 A.D. 3d 90, 99 (1st
Dep't 2014) (quoting *Thomas H. v. Paul B.*, 18 N.Y. 3d 580, 584 (2012)).  Thus, not all
deprecating statements are defamatory or libelous.  *See Dillon v. City of New York*, 261 A.D. 2d
34, 38 (1st Dep't 1999) ("Loose, figurative or hyperbolic statements, even if deprecating the
plaintiff, are not actionable.").  Instead, a statement is defamatory or libelous "if it tends to

19

expose the plaintiff to public contempt, ridicule, aversion, or disgrace, or induce an evil opinion

of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in

society." *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 366 N.E. 2d 1299, 1305 (1977); *see*

*Liberman v. Gelstein*, 605 N.E. 2d 344, 347 (1992).  "Truth provides a complete defense to

defamation claims."  *Dillon*, 261 A.D. 2d at 39 (citing *Rinaldi*, 366 N.E. 2d at 1305-06).  None

of the statements attributed to Jarecki come close to meeting the pleading standard.

Plaintiff alleges four defamatory statements: "Plaintiff's strategies did not work very

well, that Plaintiff's strategies did not yield more than a minimal profit, that relatively little

capital was committed to Plaintiff's strategies . . . , and that Plaintiff essentially disappeared."

Compl. ¶ 102; *see* Compl. ¶ 60.  These statements are not only true, as the Plaintiff knows based

on the discovery and accounting that Jarecki and third-parties produced in the first version of this

lawsuit, but they also do not rise to the level of defamatory statements.  *See Rinaldi*, 366 N.E. 2d

at 1305; *Dillon*, 261 A.D. 2d at 38.  In the article, Jarecki was cited as responding to questions

about the Plaintiff's then-recent publicly-filed allegations regarding the effectiveness of his

"Original Trading Idea."  Jarecki responded that he did not invest large sums of money into the

idea, and that it was not very profitable in any event.  He did not criticize the Plaintiff or make

any statements about his ability to work as a trader.  These statements "are not reasonably

susceptible of a defamatory meaning" to an average reader.  *Ava v. NYP Holdings, Inc.*, 64 A.D.

3d 407, 413 (1st Dep't 2009).  They should not be given "a strained or artificial [reading]" to try

to render them actionable.  *Aronson v. Wiersma*, 65 N.Y. 2d 592, 594 (1985).  This is particularly

so here because the publication was derivative of Plaintiff's own public filing.

In *Ava*, the plaintiff sued a newspaper alleging a defamatory article that "reported on an

unusual lawsuit commenced by [plaintiff, a] transgender individual who sued a well-known,

well-connected billionaire, claiming that the billionaire had sexually exploited her when she was

20

a minor." 64 A.D. 3d at 413.  The article quoted people who said the plaintiff had problems with drugs, and it referenced the plaintiff's Myspace page where she described "a lewd [sexual] fantasy." *Id.* at 414.  The Appellate Division affirmed the dismissal of these defamation claims against the publisher because the article did not sufficiently denigrate the plaintiff's character and was instead "part of a newspaper article providing a follow-up report to a prior article discussing an unusual lawsuit." *Id.* at 416.  Here, the Reuters article reported on the unusual lawsuit Plaintiff filed against Jarecki.  Here, Plaintiff alleged "a case of callous exploitation of a young, brilliant trader, Plaintiff Steven Lee, by one of the richest men on the planet" and "a modern-day Croesus." *See* Complaint, *Lee*, No. 1:14-cv-06986-KBF (S.D.N.Y. Aug. 27, 2014), Dkt. No. 1 at 1-2.  Plaintiff also described himself as a "visionary" who is "capable of achieving twenty-five percent (25%) annual returns on the assets he manages." *Id.* at 4.  The Reuters article reports on Plaintiff's own allegations and attributes objective statements to Jarecki based on the facts of the case.

Jarecki's statements in the Reuters article do "not impute to plaintiff 'any kind of fraud, dishonesty, misconduct, incapacity, unfitness or want of any necessary qualification in the exercise of [his] profession or trade.'" *Attas v. Park East Animal Hosp., Inc.*, 235 A.D. 2d 246, 247 (1st Dep't 1997) (quoting *Ullah v. Nat'l Westminster Bank, PLC*, No. 94 Civ. 5167, 1995 WL 747831, at *2 (S.D.N.Y. Dec. 18, 1995)).  In *Attas*, the Appellate Division affirmed dismissal of a defamation claim "based upon the statement in letters" doctor sent to clients stating "[plaintiff] and I had an increasing number of differences of opinion which made it impossible for me to continue her as an employee." *Id.*  Again, Jarecki's comments in the Reuters article do not comment on Plaintiff's fitness or competency with respect to his profession.

Plaintiff's defamation claim is time-barred and meritless, and it should be dismissed.

21

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss should be granted and this action should be dismissed in its entirety with prejudice.

Respectfully submitted,

/s/ Gary J. Mennitt_
Gary J. Mennitt
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10046
(212) 698-3831
(212) 314-0011 (facsimile)
gary.mennitt@dechert.com

*Attorney for Defendants*